FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 20, 2026

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

CARISSA F.,[1]

                Plaintiff,

      v.

FRANK BISIGNANO,
Commissioner of Social Security,

                Defendant.

No.   1:25-cv-03149-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to fibromyalgia; degenerative disc disease of the cervical spine, post-surgery; degenerative disc disease of the lumbar spine; right shoulder abnormality; Meniere's disease; status-post bilateral carpal tunnel release; and status-post right ulnar nerve transposition, Plaintiff

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Carissa F. claims that she is unable to work fulltime and applied for disability insurance and supplemental security income benefits. She appeals the unfavorable portion of a partially favorable decision issued by the Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of Dr. Drenguis and Dr. Deramo, and the ALJ improperly assessed Plaintiff's credibility. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.   Background

This matter is before the Court for the third time, after having been remanded twice in the past for further proceedings.  In March 2016, Plaintiff filed an application for benefits under Title 2 and Title 16, claiming disability beginning August 1, 2015, based on the physical and mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3] Plaintiff appeared at a hearing before ALJ Ilene Sloan on February 6, 2018.[4] ALJ Sloan issued an

---

[2] AR 240-246, 247-252, 274.

[3] AR 140-155, 158-159.

[4] AR 37-61.

unfavorable decision on June 29, 2018,[5] and the Appeals Council denied review.[6] On June 2, 2020, this Court remanded the case for further proceedings.[7] On August 18, 2021, Plaintiff appeared with her attorney for a hearing before ALJ M. J. Adams.[8]  Plaintiff and a vocational expert testified.[9]  ALJ Adams issued an unfavorable decision on August 25, 2021.[10] Plaintiff filed suit in this Court, and the Court found in Plaintiff's favor, reversed the ALJ's denial, and remanded the case for further proceedings.[11] The Appeals Council entered an Order remanding the case, consistent with this Court's judgment.[12]

---

[5] AR 12-32.

[6] AR 1-6.

[7] AR 635-659.

[8] AR 554-594.

[9] *Id.*

[10] AR 990-1015.

[11] AR 1016, 1017-1045.

[12] AR 1046-1050.

On October 24, 2024, Plaintiff appeared with her attorney for a hearing before ALJ Malcolm Ross.[13] Plaintiff and a vocational expert testified.[14]  After the hearing, the ALJ issued a decision partially awarding and partially denying benefits.[15] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[16] As to medical opinions, the ALJ found:

- The opinions of state agency physician James Irwin, MD, and consultative examiner William Drenguis, MD, regarding the ability to lift and carry, sit for 6 to 8 hours, and occasionally engage in postural activities are entitled to significant weight.

---

[13] AR 962-989.

[14] *Id.*

[15] AR 873-909.  Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[16] AR 27-32.

DISPOSITIVE ORDER - 4

- The opinions of state agency physician James Irwin, MD, that Plaintiff can stand and walk for 6 hours and had no manipulative limitations are entitled to little weight.

- The opinions of consultative examiner William Drenguis, MD, that Plaintiff can stand and walk for up to 4 hours and occasionally reach and handle are entitled to some/partial weight. The opinions of treating source Mark Deramo, MD, are entitled to little weight.[17]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Act through March 31, 2016.

- Step one: Plaintiff had not engaged in substantial gainful activity since August 1, 2015, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: cervical spine degenerative disc disease status-post surgery; lumbar spine degenerative disc disease; fibromyalgia; right shoulder abnormality; status-post

---

[17] AR 894-897.

DISPOSITIVE ORDER - 5

bilateral carpal tunnel release and right ulnar nerve transposition.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  With customary breaks, she can stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an eight-hour workday. She can lift and/or carry a maximum of 20 pounds on an occasional basis and 10 pounds on a frequent basis. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs and can occasionally balance, stoop, kneel, crouch, and crawl. With the bilateral upper extremities, she can reach, handle, and feel frequently and can finger occasionally. She must avoid concentrated exposure to hazardous machinery and unprotected heights.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a

DISPOSITIVE ORDER - 6

router (DOT 222.587-038), school bus monitor (DOT 372.667-042), and storage facility rental clerk (DOT 295.367-026).[18]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[19]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[20] and such error impacted the nondisability determination.[21] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

---

[18] AR 880-899.

[19] AR 176.

[20] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[21] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22]

### III.  Analysis

Plaintiff seeks relief from the denial of disability on three grounds. She argues the ALJ erred when he assessed her overall character, erred when evaluating the medical opinions, and erred when evaluating Plaintiff's subjective complaints.[23]  As is explained below, the Court concludes that the ALJ consequentially erred in his evaluation of the medical opinion evidence and Plaintiff's subjective complaints.

---

[22] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[23] ECF No. 9.

**A.    Plaintiff's Subjective Complaints:  Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to properly assess her subjective complaints and violated SSR 16-3p by assessing her overall character. The Court concludes that the ALJ improperly assessed Plaintiff's testimony both by focusing on minor inconsistencies and by taking other testimony out of context.

1.    <u>Standard</u>

When examining a claimant's symptoms, the ALJ utilizes a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[24] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and

---

[24] *Molina*, 674 F.3d at 1112.

convincing reasons' for the rejection."[25] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.[26] "The clear and convincing standard is the most demanding required in Social Security cases."[27] Therefore, if an ALJ does not articulate specific, clear, and convincing reasons to reject a claimant's symptoms, the corresponding limitations must be included in the RFC.[28]

---

[25] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

[26] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[27] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[28] *Lingenfelter*, 504 F.3d at 1035 ("[T]he ALJ failed to provide clear and convincing reasons for finding Lingenfelter's alleged pain

1. Plaintiff's Testimony

    a. *2024 Hearing*[29]

On October 24, 2024, Plaintiff appeared via telephone with her attorney for her third hearing before an ALJ, this one before ALJ Malcolm Ross.[30] Plaintiff testified, and vocational expert Maggie Dillon testified.[31]

Plaintiff testified that she received a GED and was right-handed.[32] When asked if she had worked since 2019, she said she had

---

and symptoms not credible, and therefore was required to include these limitations in his assessment of Lingenfelter's RFC.").

[29] This summary focuses on Plaintiff's testimony during the third hearing, as the Court finds that the ALJ failed to consider Plaintiff's testimony regarding her living situation and her reasons not to find a new primary doctor.

[30] AR 962-989.

[31] *Id.*

[32] AR 969.

not.[33] She said she was not able to work full-time because she has to sit or lay down and cannot walk far, can barely walk on bad days, has to take opioid medication, cannot lift much, and her hand goes numb if she types.[34] She said she takes oxycodone twice a day and morphine twice a day and that they relieve her pain on some days but not on other days.[35] She said she has been on opioids for 15 years and no one has suggested different treatments.[36]

Plaintiff testified that she did not want to switch doctors because she had neck pain for years and was told by doctors in Yakima to do physical therapy, but after being referred to Dr. Deramo he immediately ordered an MRI and determined two vertebrae needed to be fused and were causing her pain.[37] Once the vertebrae were fused in

---

[33] *Id.*

[34] AR 969-970.

[35] AR 970

[36] AR 970-971.

[37] AR 971-972.

DISPOSITIVE ORDER - 12

a surgery performed three months later, her neck pain was relieved.[38] She trusted Dr. Deramo and did not want another doctor.[39] She said she lives in a house with her significant other and used to live with her mother but she moved out in March or April "seven years ago" (which the ALJ then stated would be 2017) because her daughter moved in to take care of Plaintiff's mother.[40] She said she moved out because her mother's health was declining and her daughter was able to take care of her mother's needs but she was not.[41]

Plaintiff testified that on a typical day she would sit with a heating pad in a recliner but on good days she was able to cook or clean.[42] She said she did not currently go out and that in the period between 2015 and 2018 she had traveled once to Sequim with her

---

[38] AR 972.

[39] *Id.*

[40] AR 972-973.

[41] AR 973-974.

[42] AR 974.

DISPOSITIVE ORDER - 13

boyfriend because he was selling his business.[43] When there, they did not sight see but did go out for dinner.[44] She said that her condition had worsened since the last hearing.[45] She said the stimulator in her neck was not working properly and she was now having constant numbness in her arm.[46] She is now only able to drive once a week to either get groceries or to her mother's house four miles away.[47]

Plaintiff testified that Dr. Deramo is her primary care doctor and she has treated with him for 5 years.[48] She agreed that she would likely miss 4 or more days of work a month because she randomly suffers from flare-ups in her pain.[49] She stated that when she raised her hand to take an oath at the start of the hearing she had to raise her right arm

---

[43] AR 974-975.

[44] AR 975.

[45] *Id.*

[46] AR 976.

[47] *Id.*

[48] AR 977.

[49] AR 977-978.

DISPOSITIVE ORDER - 14

with her left hand.[50] She said she can't stand for more than 15-20 minutes and cannot sit more than 10 minutes.[51] She said that 4 months prior when her pain stimulator was working she could use her hands for 30-40 minutes before resting them for an hour.[52]

### b.    2018 Hearing

At her hearing in February 2018, Plaintiff testified that she lived with her mother.[53] She stated that she believed that she last worked for either Abbott's Printing or Costco call center but was not sure which, and that she had not worked since her last hearing in 2014.[54] She said that she lived in a mobile home with her mother and they "help each other" and shopped together and ate microwave meals.[55] She later clarified that she meant that they "just help each other emotionally"

---

[50] AR 978-979.

[51] AR 979.

[52] AR 981.

[53] AR 42.

[54] AR 42.

[55] AR 44.

and had "decided that vacuuming is not that important in life."[56] She stated that she had problems with lifting and with walking distances, and had injections and nerve ablations that were unsuccessful and they were considering a permanent nerve stimulator for her back.[57] She said that she sees her daughter and 2 grandchildren daily because the 2 grandchildren, then aged 7 and 8, take their school bus to her mother's house and her daughter then comes within a half hour to pick them up.[58]

2.    Relevant Facts and Records

At the time she filed her applications for disability, Plaintiff listed her address as South 6th Avenue in Yakima.[59] All subsequent notices including the notice of hearing for her 2018 hearing were sent to that location.[60] On April 26, 2018, Plaintiff's attorney filed a change of

---

[56] AR 51.

[57] AR 44-45.

[58] AR 47.

[59] AR 273.

[60] AR 226.

address notification changing her address from the former address to her present address on State Route 821 in Yakima.[61] In June 2018, Plaintiff's hearing decision was sent to the address on State Route 821 and all subsequent correspondence, including the most recent ALJ decision, have been sent to the State Route 821 address.[62]

3.    The ALJ's Reasoning Regarding his Credibility Assessment and Analysis of his Evaluation

a.    *The Prior ALJ's Credibility*

The ALJ noted that the prior ALJ made several credibility findings but stated that he did not adopt them because he was "constrained to find only consistency and inconsistency."[63] The ALJ then went on to detail the three inconsistencies noted by the prior ALJ.  The Court concludes that it is not required to address the underlying issue that the ALJ erred in stating that he was not adopting the prior ALJ's findings but then allowed them to influence his own analysis, because

---

[61] AR 235.

[62] AR 595, 873.

[63] AR 888.

the prior ALJ findings were erroneous and flawed.

The ALJ first noted that the prior ALJ stated:

> At first, she testified that her last job was with Costco and she stopped working in February 2011. However, earnings records show that she had some wage earnings from Abbots Printing in the third quarter of 2011, and from Yakima Community College in the second, third and fourth quarter of 2011, as well as the first quarter of 2012 (5D/1). These earnings records contradict the claimant's testimony. Further, the claimant told a consultative examiner on May 17, 2012 that she "has been last employed January 2011, when she worked as a call agent." (12F/1) The claimant did not disclose that she also held another job at Costco in 2011. According to her testimony, another job of phlebotomist ended by mutual agreement with her employer, but the claimant told Dr. Genthe that she "could no longer do [it] because of [her] arms." (12F/1).[64]

The Court notes that there appears to have been no intentional inconsistency or misrepresentation on Plaintiff's part. Plaintiff testified that she believed that she last worked for either Abbott's Printing or Costco's call center in 2011 but was not sure which.[65] Plaintiff's earnings records show that she did likely last work in 2011. Her earnings records show that she worked full-time from 2003 through

---

[64] Id.

[65] AR 42.

DISPOSITIVE ORDER - 18

2009 for Interpath Laboratory, earning an average of $25,000 per year.[66] In 2010, Plaintiff earned a total of $6,447.00 between wages from Yakima Valley College, Costco, and Abbott's Printing.[67]  In 2011, Plaintiff earned a total of $1,630 in wages, again between wages from Yakima Valley College, Costco, and Abbott's Printing.[68] And in the first quarter of 2012, Plaintiff was paid $210.00 by Yakima Valley College.[69]

Even if one were to assume that the $210.00 in wages paid in the early part of 2012, was in fact worked in 2012 and not just paid in early January, it represented no more than 22 hours of work even at a minimum wage calculation.  Similarly, the total of work performed between all three jobs performed in 2011, at minimum wage, totaled no more than 180 hours of work performed over a period of 12 months. The Court concludes that Plaintiff's testimony in 2018 that she did not remember whether it was Abbott's Printing or Costco that she last

---

[66] AR 263-264.

[67] AR 264.

[68] Id.

[69] AR 264-265.

DISPOSITIVE ORDER - 19

worked for but that it was in 2011, was likely truthful.  The 3 days of pay she received from Yakima Valley College may or may not have been performed in 2012 rather than 2011, and it represented a relatively short time of work.  The Court would decline to brand a witness untruthful for not remembering what equaled 2 and a half days of work 8 years after the fact.

As to the alleged discrepancy between Plaintiff's testimony that she left her job with Interpath Laboratories because she was unable to continue for medical reasons and her statement to her provider that she and her employer mutually agreed she should leave, there is no inherent conflict.  Plaintiff held her position without incident for 7 years, and there is no allegation that she was fired, but rather that she and her employer agreed she unable to continue.  This supports, rather than refutes, that she was becoming unable to do the job.

He then noted that the prior ALJ had found it inconsistent that Plaintiff told a consultative examiner in 2010 that she had left at least 3 prior jobs for non-medical reasons.[70] Again, this finding focuses on an

[70] AR 888-889.

DISPOSITIVE ORDER - 20

irrelevant fact, because 2010 was 5 years prior to the alleged onset date, and Plaintiff was discussing employment that she held and left prior to becoming disabled.

The ALJ then noted that the prior ALJ found Plaintiff's testimony of waxing and waning symptoms to be too broad to be credible, reciting the prior ALJ's finding that:

> . . . . At the hearing, the claimant testified that her adult daughter does everything for the claimant's grandchildren. The claimant described that her daughter "does all of the cooking for them and cares for them." (hearing testimony) However, at a clinic visit on October 27, 2011, Melissa Van Tassel, M.D. recorded that it was the claimant who "takes care of her grandchildren." (7F/1) Furthermore, the claimant herself testified that prior to her daughter moving in with her, the claimant could "help out with cooking" and could drive her own car several times a week on "good days." (hearing testimony) However, after her daughter moved in to help her, the claimant then became much less functional, to an extent that she needed her daughter to zip up her clothing and tie her hair in a ponytail. She told Dr. Schultz in a consultative interview that "if she is having a good day she will spend time in the garden." While it is understandable that the claimant will have waxing and waning of symptoms or good days and bad days, it is not plausible that she would have such extremes of function on those days: unable to zip her clothes one day but able to garden the next, particularly in light of the objective evidence of her impairments. The claimant "stated she also

DISPOSITIVE ORDER - 21

does the dishes, helps make dinner," as well as "divide[s] up the laundry." Despite allegations of severe impairments of the hands, the claimant told Dr. Schultz that "she does crafts as a hobby." (4F/3) The claimant also traveled for leisure. On April 19, 2013, the claimant reported that she "Recently returned from cruise and had flare up of back pain after sitting on airplane for long periods of time." (16F/17). While vacations and disability are not mutually exclusive . . . travel requirements demonstrate substantially higher physical demands than the claimant has alleged.[71]

Initially the Court notes that the prior ALJ's apparent demand that Plaintiff prove that her daughter parents her own children, rather than leave the task to Plaintiff is odd. There is no evidence of record or even an allegation that Plaintiff was ever guardian or custodian of her daughter's children.  And the fact that the prior ALJ discredited Plaintiff's testimony that she gardens or does crafts "on good days" as unbelievable fails to consider the nature of her condition and the symptoms which waxed and waned.  Plaintiff's testimony and reports to her medical sources was consistent that she had good days and bad days and was able to do more on good days.  Again, the records recited support rather than detract from Plaintiff's credibility.

---

[71] AR 889.

> ### b. The ALJ's Finding that Plaintiff was Untruthful Regarding Caring for Her Mother

The ALJ then made his own findings regarding inconsistencies in testimony, noting that Plaintiff testified that she lived with her mother until March or April of 2017, but then moved because her mother needed more help and daughter moved in to provide it instead.[72]

The ALJ noted that in a function report submitted in May 2016, Plaintiff said she lived with her boyfriend and did not mention her mother at all.[73] In his next sentence, however, the ALJ noted that in June 2016, Plaintiff's mother "returned home from the nursing home and required assistance from her.[74] He noted that in January 2018, Plaintiff told a provider that she lived with her mother and had taken care of her for 2 years.[75]

The ALJ then stated:

---

[72] *Id.*

[73] AR 890.

[74] AR 890.

[75] *Id.*

> I find the claimant's current testimony that she moved out of her mother's home in March or April of 2017, and that her daughter was then caring for the claimant's mother, to be inconsistent with the evidence above. I find that the claimant continued to live with her mother and to provide her assistance, for years after her mother returned from a nursing home. The result of these inconsistencies is that I find the claimant's allegations and testimony to be unreliable and unpersuasive, and I must rely on other record evidence.[76]

The Court concludes that this finding is rooted in a misunderstanding and a simple miscalculation on Plaintiff's part, and that the evidence of record does support that Plaintiff moved out of her mother's home in March or April of 2018, in exactly the manner she testified to.

To view the record as a timeline, it appears that in May 2016, Plaintiff lived with her boyfriend and not her mother, as noted in her function report.[77] In June 2016, her mother returned from a nursing home and Plaintiff continued to live with her into the first quarter of

---

[76] *Id.*

[77] AR 790.

2018.[78] This is established both by a medical record from a January 2018 visit, in which she state that she had lived with her mother for about 2 years,[79] and her hearing testimony in February 2018 that her mother lived with her.[80]

In March of 2018, not 2017, as the Plaintiff mistakenly seemed to testify to, she moved to a different address as evidenced by the change of address her attorney filed with the administration.[81] Thereafter, her address remained at the new location, where she  testified she resides solely with her boyfriend.[82]

The Court notes that the ALJ considered that Plaintiff's January 2018 statement to her doctor that she lived with her mother was not consistent with her having moved in March of April of 2017, but the finding was flawed because Plaintiff miscalculated the timing of her

---

[78] *Id.*

[79] AR 512.

[80] AR 42.

[81] AR 235.

[82] AR 973.

move by one year.  Had the ALJ considered that Plaintiff moved in March or April of 2018, no inconsistency would have existed.

> c.     *The ALJ's Finding that Plaintiff Engaged in Drug-Seeking Behavior*

The ALJ stated:

> Dr. Deramo has continued prescribing narcotics to the claimant, who for that purpose drives over a mountain pass to Sammamish, Washington, because, she says, she "does not trust" Yakima physicians (See e.g., Exhibit B1F/8). I find a pattern of behavior consistent with narcotic addiction and drug-seeking, fueled by exaggerated symptom reports that are inconsistent with the claimant's taking care of her mother, as well as her travel (see herein).[83]

As noted, the ALJ's finding that Plaintiff cares for her mother, or has cared for her mother after April 2018, appears to be a misunderstanding of the record.

There is no indication that the ALJ considered Plaintiff's explanation for the reason she did not trust doctors closer to her home. Plaintiff testified that she was first referred to Dr. Deramo when she was suffering from debilitating neck pain that other doctors thought an

---

[83] AR 891.

DISPOSITIVE ORDER - 26

exaggeration and that Dr. Deramo ordered an MRI that found an underlying disc issue that required surgical correction.[84]

While it is true that Dr. Deramo suggested that Plaintiff attend a pain management clinic, he has never stated that she manufactured her pain or that she was an addict.  There is no indication in the record that any medical source has opined that Plaintiff's pain was not real or that she was an addict. The ALJ is correct that Dr. Deramo opined at one time that Plaintiff might be better served to be referred to a pain specialist and to be tapered off narcotics.[85] But Plaintiff did in fact attend multiple appointments with a pain specialist, Cong Yu, MD, on Dr. Deramo's referral and Dr. Yu concurred that narcotic pain medication was warranted.[86]

Plaintiff's narcotic medication has been prescribed by one single source and there is no instance in the record where Plaintiff has requested extra medication from her prescriber or any other source.

---

[84] AR 971-972.

[85] AR 891.

[86] AR 798, 815, 821, 823, 830,

DISPOSITIVE ORDER - 27

Neither Dr. Deramo nor Dr. Yu question that the narcotic medication is necessary and warranted to treat Plaintiff's chronic pain. Plaintiff has been tested regularly for compliance since 2016 and has only once had an equivocal positive test result. There is no medical basis in the record to support the ALJ's finding that Plaintiff is an addict and that her reports of chronic pain are disingenuous.

Drug-seeking behavior can be a clear and convincing reason to discount a claimant's reported symptoms, particularly where there is little treatment and the basis for disability is an unsupported diagnosis.[87] However, this case differs significantly than *Edlund*, and others following it.  Here, there is no question that there is a physical basis for Plaintiff's pain and she has undergone numerous non-conservative medical treatments including injections, nerve ablation,

---

[87] *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (holding that evidence of drug seeking behavior undermines a claimant's reported symptoms); *Gray v. Comm'r, of Soc. Sec.*, 365 F. App'x 60, 63 (9th Cir. 2010) (recognizing that evidence of drug-seeking behavior is a valid reason for discounting a claimant's symptom claims).

DISPOSITIVE ORDER - 28

surgical implantation of a spinal cord stimulator, and multiple surgeries.[88] Plaintiff's history included trials of physical therapy, a cervical fusion surgery, 2 surgically implanted spinal stimulators – 1 removed due to infection, a bilateral carpal tunnel release, and a left elbow nerve transposition surgery.[89] Additionally, multiple other medication trials were unsuccessful – NSAIDS did not help, Plaintiff had an allergic reaction to muscle relaxers, neuropathics were ineffective, and her present treatment includes neuropathics with supplemental tricyclic anti-depressants.[90] The record before the Court is not one on which it can conclude Plaintiff chased after narcotic pain medication and declined other alternative treatments.

Based on the record before it, the Court concludes that while the ALJ suspected that there is evidence of drug-seeking behavior, medical providers did not believe this to be the case, and the ALJ's proper course of action would be to seek an opinion from a qualified medical

---

[88] AR 483-485, 792-795.

[89] AR 797-798.

[90] AR 483.

DISPOSITIVE ORDER - 29

source regarding the issue.

4.    Summary

Again, the Court concludes that the reasoning articulated by the ALJ for his findings as to Plaintiff's overall credibility and to her subjective complaints are not supported by the record. The Court finds that remand is warranted and orders that the ALJ be directed to obtain a medical opinion as to the possibility of drug-seeking behavior, should he find the issue relevant. Because the Court has remanded the case for consideration of this issue, the ALJ will also be required to re-consider the credibility of Plaintiff's subjective complaints.

**B.    Medical Opinions: Plaintiff establishes consequential error.**

Because the Court has determined that remand is warranted to consider the overall credibility of Plaintiff's testimony and subjective complaints of pain, it will only briefly address this issue.

Plaintiff argues the ALJ erred in his evaluation of the medical opinions and violated the remand order by discounting the reaching, handling, and feeling limitations opined by Dr. Drenguis for reasons already rejected by this Court, while accepting Dr. Drenguis' other

opinions.[91]  The Commissioner concedes that the ALJ provided reasons which this Court had found not to be good reasons in its prior order but argues that the ALJ also reasoned that Dr. Drenguis had relied on Plaintiff's "unreliable self-reported symptoms."[92]

The Court concludes that the ALJ violated the Court's remand order by providing reasons for discounting Dr. Drenguis' opined limitations in reaching and handling which were rejected by the Court in its prior order.[93] The remaining portion of the Commissioner's argument is rendered moot by the Court's ruling above that the ALJ erred in his consideration of Plaintiff's overall credibility and the credibility of her subjective complaints of pain.

---

[91] ECF No. 9, 15. An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[92] ECF No. 14.

[93] AR 544, 895-896, 1038-1042.

Because the ALJ's reasoning that Dr. Drenguis' opinion was properly rejected because it was based on Plaintiff's subjective complaints was dependent on a finding that the complaints inherently lacked credibility this additional reason also fails.

As noted, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[94] This

---

[94] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any

requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[95]

There is no indication that the ALJ has medical training which would allow him to interpret the raw medical data and make his own medical assessment of the functional limitations following Plaintiff's surgeries.[96] Yet, the ALJ has articulated that a limitation to frequent feeling, handling, and reaching is sufficient to account for Plaintiff's severe impairments The ALJ has not explained how he arrived at his conclusions when formulating the RFC, other than to again cite to

---

other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[95] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (alteration added).

[96] ALJs cannot usurp the role of doctors when interpreting medical evidence, particularly highly technical medical evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017).

Plaintiff's use of opioids.  Instead, he offered a conclusory opinion of the expected limitations.[97]

The Court concludes that remand is warranted for the ALJ to properly consider the opinion evidence and to obtain medical expert testimony or opinion as to Plaintiff's limitations throughout all relevant periods, including the period preceding Plaintiff's surgery and the period of recovery immediately following it.

## C.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[98] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[99]

---

[97] *See Garrison v. Colvin*, 759 F.3d 995, 1013-14 (9th Cir. 2014).

[98] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[99] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to

The Court finds that further development is necessary for a proper disability determination. Here, while it appears clear that Plaintiff suffered disabling limitations, it is not clear when those limitations became disabling.   While Dr. Drenguis' opinion provides that Plaintiff suffered additional limitations, it is unclear as to the date from which Plaintiff experienced additional limitations.  Therefore, the ALJ should call a medical expert to testify as to Plaintiff's physical limitations, properly consider the opinion evidence, and make findings at each of the five steps of the sequential evaluation process.

Additionally, the Court directs that the case be remanded to a different ALJ, who has not already heard the case, so that a de novo review will be conducted.  The ALJ's decision was partially favorable, and the ALJ awarded Plaintiff benefits beginning on April 30, 2022, the date on which she changed age categories.  The Court directs that the portion of the ALJ decision which awarded benefits on and after April

remand to the agency for additional investigation or explanation");
*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

DISPOSITIVE ORDER - 35

30, 2022, shall remain effective and that the ALJ on remand is to reconsider only the period prior to April 30, 2022.

### IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 14**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 20th day of March 2026.

_____
EDWARD F. SHEA
Senior United States District Judge

DISPOSITIVE ORDER - 36